UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN LAMAR BARNES, #336-955, | : | CASE NO. C-1-02-101 |
| | : | |
| Plaintiff, | : | JUDGE SPIEGEL |
| v. | : | MAGISTRATE JUDGE SHERMAN |
| | : | |
| MATTHEW THOMAS, et al., | : | |
| | : | |
| Defendants. | | |

### DEFENDANTS' REPLY

Plaintiff alleges that on September 5, 2001, Defendant Thomas used excessive force on him when he pulled him up by the handcuffs to escort him to the segregation cellblock. In his response, Plaintiff acknowledges that he did not present any evidence on his behalf to support his claim of injury caused by the Defendant. However, he apparently exhibited an injury more than 4 months later.

On the date in question, Defendant Capt. Neff had received a note concerning the Plaintiff, stating that unless Plaintiff is moved out of the block "We will kill him, he has AIDS". (Ex. B-3). That note prompted Capt. Neff to contact Defendant Dunn, to bring Plaintiff to the cage to be escorted to segregation for Protective Custody Investigation. Plaintiff acknowledges that an Officer Sharp went to get him, handcuffed him, and placed him in the cage. Capt. Neff sent Defendant Thomas to the cage to escort Plaintiff. Plaintiff alleges that Defendant Thomas pulled him up by the handcuffs when he escorted him.

Defendants raised three issues to which Plaintiff has not responded:

1. An inmate who is being escorted and not resisting does not have to be touched at all.

    2.    There was no need to enter the cage and pull him up, since the Plaintiff was able to walk out and did so willingly.

    3.    Any activity occurring in the cage would have been easily viewed by the officers in the glass enclosed booth directly next to the cage.

Therefore, even if Plaintiff subsequently suffered some injury as a result of being handcuffed, none of the Defendants can be held accountable for that.

Plaintiff states that he feared for his life from Sgt. Thomas because several days previously he had verbally threatened the Plaintiff. Courts have consistently held that, although not condoned, "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983) (internal cite omitted). Purely verbal abuse, threats, or harassment by a corrections officer do not violate the Eighth and Fourteenth Amendments irrespective of whether it was a catalyst for another constitutional violation. *Ivy v. Wilson*, 832 F.2d 950 (6th Cir. 1997); see *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); citing *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993). Even threats of bodily harm are not actionable. *Bolden v. Mandel*, 385 F. Supp. 761, 764 (D. Md. 1974), ("were a prisoner… entitled to a jury trial each time that he was threatened with violence by a prison guard, even though no injury resulted, the federal courts would be more burdened than ever with trials of prisoner suits…"). Accepting Plaintiff's claim as true, as one must in seeking summary judgment, any threats made on September 1st by Sgt. Thomas do not rise to a constitutional violation.

Plaintiff seems to believe that because the note which prompted the placement in protective custody was lost, somehow this makes the Defendants liable. It does not. Even though Plaintiff had previously repeatedly requested protective custody, claiming

2

that other inmates were threatening him, Defendants correctly acted upon the latest threat.  Since they chose to err on the side of caution, they took the matter before a protective custody committee.  The committee informed Plaintiff that inmates are not placed in PC over a concern with staff.  They concluded that what he wanted was to pick and choose where he blocked.  They found no life threatening situation in this matter.  (Ex. B-3).

O.A.C. §5120-9-01 provides the guidelines when force can be used against an inmate.  Pursuant to ¶(C) there are six general circumstances when a staff member may legally use force against an inmate.

1. Self defense from an assault by an inmate.
2. Defense of a third person.
3. Controlling or subduing an inmate.
4. Prevention of crime.
5. Prevention of escape.
6. Controlling an inmate to prevent self inflicted harm.

None of those six were applicable in the case at bar.  Neither Plaintiff nor Defendant claim any of those factors were in play.  Furthermore, pursuant to O.A.C. §5120-9-02, if any force is used, the employee must, prior to leaving the institution for the day, file a Use of Force Report.  In addition, any employee who witnesses a use of force by another employee must file an Incident Report prior to leaving the institution.  In the case at bar, there was no Use of Force Report made by Sgt. Thomas and no Incident Report made by any staff members, including those who were in the booth and were in a position to observe what was happening in the cage.  Finally, based on Plaintiff's later claim that force was used on him, a Use of Force Committee was convened.  They interviewed all those involved and those who could have witnessed the

incident and came to the conclusion that there was no evidence to support Plaintiff's claim. (Ex. B-3).

Plaintiff's injury is suspect, for several reasons. He did not tell any officers in segregation or, more significantly, did not ask to see a nurse until 12 hours later. When he was examined by a nurse, no bruise was seen, (Ex. G, Parks Aff., ¶6b). Four days later, he had a bruise. (*Id*. ¶6c).

Between the date of the incident and the end of the year, four months later, each time he came to the infirmary complaining about his wrist, there was no objective finding of an injury. (*Id.*).

More significantly, on no occasion when he saw the nurse or the doctor did he claim that excessive force had been used. On two occasions, on October 30, 2001, and again on November 29, 2001, he stated that his problems started when he was being cuffed. As mentioned above, none of the Defendants cuffed him.

Plaintiff has attached five affidavits intending to support his claim of excessive force. In reading those affidavits, none of them allege that they saw anyone use excessive force on Plaintiff. Inmate Duke confirms that CO Sharp brought Plaintiff from his cell with his hands cuffed behind him. He says he heard Plaintiff yelling. Inmate Jones also claims that he witnessed CO Sharp taking Plaintiff past his cell to the bullpen. He, too claims he heard Plaintiff holler. Inmate Barron claims that he was assaulted by Defendant Thomas on December 10, 2002, over a year after the incident at issue. Inmate Fulford who was in segregation where Plaintiff was taken, provides an affidavit claiming that he heard Plaintiff ask to see a nurse about his wrist. Finally, Inmate Roberts alleges that on October 9, 2002, he heard Defendant Thomas threaten

4

Plaintiff if he did not drop his lawsuit. The first two inmates claim they heard Plaintiff cry out, but do not allege that they saw anything. There are no affidavits from anyone that they witnessed any force used by Sgt. Thomas. None of those affidavits serve to support Plaintiff's claim that Defendant Thomas used excessive force against him.

As to the other two defendants, Paul Dunn and Capt. Larry Neff, Plaintiff makes no claim of a constitutional violation against either of them. Defendant Dunn was the one who interviewed the Plaintiff at the request of the Captain in response to the note that the Captain had received. Defendant Dunn then completed a screening report for the PC Committee. After Plaintiff filed a grievance on September 27th, alleging the use of force, a Use of Force Committee was convened. For this particular incident, an alternate member Sgt. Frowine joined them and heard Plaintiff's evidence, rather than Mr. Dunn, the regular member of the committee. (Pl. Ex. H-2).

It is quite possible that, as has been his pattern in the past, Plaintiff has manufactured a story. There is no evidence that Sgt. Thomas even touched the Plaintiff, much less used excessive force on him. There is no Use of Force Report, and there are no Incident Reports filed by other officers. More significantly, there was no evidence of injury until four and half months later. Each time Plaintiff went to the infirmary, he stated that he was in pain because of being handcuffed. He didn't say force was used on him. On September 27, 2001, three weeks after the incident at issue, he filed a grievance claiming use of force. (Ex. I). He sent a second grievance a few days later, on October 1, 2001. He was interviewed on October 10, 2001. (Ex. K). Because Plaintiff claimed that a use of force was not reported, the Use of Force

5

Committee investigated, pursuant to O.A.C. §5120-9-03, and concluded no force was used.

Since none of the defendants can be held liable for a constitutional violation to the Plaintiff, this case should be dismissed as a matter of law.

Respectfully submitted,

JIM PETRO
Attorney General of Ohio


s/ MARIANNE PRESSMAN
MARIANNE PRESSMAN (0059512)
Assistant Attorney General
Corrections Litigation Section
1600 Carew Tower, 441 Vine Street
Cincinnati, Ohio 45202-2809
(513) 852-3497
E-Mail:  mpressman@ag.state.oh.us

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was forwarded to Plaintiff, John Lamar Barnes, #336-955, Warren Correctional Institution, P.O. Box 120, Lebanon, Ohio 45036, by regular U.S. mail on this 2nd day of October, 2003.

s/ MARIANNE PRESSMAN
MARIANNE PRESSMAN (0059512)
Assistant Attorney General
Corrections Litigation Section
1600 Carew Tower, 441 Vine Street
Cincinnati, Ohio 45202-2809
(513) 852-3497
E-Mail:  mpressman@ag.state.oh.us