# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

John Lamar Barnes,
      Plaintiff

    vs                              Case No. C-1-02-101

Matthew Thomas, et al.,           **REPORT AND**
      Defendants              **RECOMMENDATION**
                                 (Spiegel, J.; Novotny, M.J.)

      Plaintiff, a former inmate at the Southern Ohio Correctional Facility (SOCF), brings this action under 42 U.S.C. § 1983 alleging a violation of his constitutional rights under the Eighth Amendment. The remaining defendants in this action are SOCF Sgt. Matthew Thomas[1], SOCF Unit Manager Paul Dunn, and SOCF Capt. Neff.[2] Plaintiff alleges that on September 5, 2001, defendant Thomas used excessive force against him in violation of the Eighth Amendment. Plaintiff further alleges that defendant Dunn ignored plaintiff's request for protection from defendant Thomas in violation of the Eighth Amendment. Plaintiff also alleges that defendant Neff's actions prompted the violations by the other defendants. This matter is before the Court on defendants' motion for summary judgment (Doc. 39), plaintiff's memorandum in opposition (Doc. 57), defendants' reply memorandum (Doc. 61), and plaintiff's response to defendants' reply memorandum. (Doc. 62).

      A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

---

       [1]      Erroneously identified in plaintiff's complaint as "Michael" Thomas.

       [2]      Plaintiff's claims against defendants Warden Carter and the Ohio Department of Rehabilitation and Correction were dismissed on initial screening. (Doc. 5).

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. The Court's function is not to weigh the evidence; its duty is to determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252; *Little Caesar*, 219 F.3d at 551.

## I. Facts

On September 5, 2001, defendant Captain Neff, the shift commander at SOCF, received information that a note had been sent to plaintiff threatening his life. As a shift commander, Captain Neff has a major responsibility for the safety and security of the inmates at SOCF. If he believes an inmate could be at risk by threats from other inmates, he has the authority to place the inmate in security control

investigation/protective custody investigation, a segregation cellblock, pending an investigation. (Doc. 39, Neff Aff.). On the date in question, Neff asked defendant Unit Manager Dunn to interview plaintiff and write a screening report for the protective custody committee. (Doc. 39, Neff Aff.). Plaintiff was escorted to Unit Manager Dunn's office by defendant Sgt. Thomas to be interviewed about the note. However, plaintiff was under the misimpression he was to be interviewed about an earlier confrontation with Sgt. Thomas on September 1, 2001. Apparently, there was a dispute over whether plaintiff was on a recreation restriction, during which Thomas allegedly verbally threatened to "hurt" plaintiff. (Barnes Depo. at 26-28; Doc. 57, Dukes Aff.). Plaintiff states that following Thomas's alleged threat, plaintiff did not file a written complaint or grievance against Thomas because plaintiff's friends assured him that Thomas, who was in a supervisory position at the prison, would not do anything to plaintiff. (Barnes Depo. at 28). Yet, when questioned about the note on September 5, 2001, plaintiff stated that the only person he was afraid of was Sgt. Thomas. Plaintiff then requested protective custody from Sgt. Thomas. (Barnes Depo. at 29). Plaintiff was advised that protective custody is intended for protection from other inmates, and not institution staff. Plaintiff was advised to pursue the inmate grievance procedure to resolve any issues he had with the staff. (Barnes Depo. at 29).

Approximately 25 minutes later, plaintiff was summoned over the intercom at L-3 cellblock. He was handcuffed by one corrections officer Sharp and taken to the "bullpen," apparently a type of holding cell in L-block. (Barnes Depo. at 29-30; Doc. 57, Dukes Aff.). Shortly after being placed in the bullpen with handcuffs still on, defendant Thomas arrived. (Barnes Depo. at 29). Defendant Thomas had been asked by Captain Neff to escort plaintiff from the bullpen to protective custody investigation, the cellblock housing inmates under investigation for either offenses or for protective custody. (*Id.*; Doc. 39, Wynn Aff.). Plaintiff asked Thomas why he was being taken to segregation. Thomas allegedly replied the reason was because Thomas told Captain Neff that plaintiff was harassing Thomas. (Barnes Depo. at 29). Plaintiff states that defendant Thomas took plaintiff's left hand, twisted it, then pulled upwards while applying pressure and "much force." (Doc. 3 at 3; Barnes Depo. at 30).[3]

The defendants present evidence that when an officer comes to the "bullpen"

---

[3]    Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

to escort an inmate, it is usually not necessary for him to enter the bullpen. Instead, the bullpen sliding gate is opened, and the handcuffed inmate steps out to the escorting officer. Based on the institution's use of force policy, if there is no resistance on the part of the inmate, there is no reason for the escorting officer to touch him. If the escorting officer believes that it is necessary to put his hands on an inmate, regardless of the amount of force used, he would write an incident report and would see that the inmate was checked by medical staff. A medical report would be written as well. (Doc. 39, Wynn Aff.; Doc. 39, Exh. D). Officers in the control booth adjacent to the bull pen are in a position to observe the activities within the bullpen. (Doc. 39, Exh. C). No such use of force or medical report was written in this matter immediately following the incident by either Thomas or the officers in the control booth.

Plaintiff arrived at the protective custody investigation block at approximately 5:00 p.m. Plaintiff states his arm was painful and that he requested medical assistance once he arrived at the block. (Barnes Depo. at 32). Plaintiff states he was told he would have to wait until the nurse makes her rounds. *Id*. Plaintiff states that his left wrist became swollen and bruised. Plaintiff was examined by a nurse approximately 12 hours later. The Medical Exam Report of the examination indicates the area above plaintiff's left wrist was swollen, with no loss of sensation or movement of the left forearm or wrist, and complaints of pain at the site. (Doc. 39, Exh. E; Doc. 57, Exh. B). No bruising was noted. X-rays were ordered and plaintiff was referred to the institutional physician for a follow-up examination. (*Id*.; Doc. 39, Exh. G, Parks Aff.).

Plaintiff was examined by the institutional physician on September 10, 2001. The physician noted a bruise on the left forearm, with full range of motion, no swelling and no indication of a fracture. (Doc. 39, Exh. G, Parks Aff. and progress notes). Mona Parks, the SOCF Health Care Administrator, states that had the bruise observed by the doctor occurred based on the incident of September 5, 2001, it would have been visible when the nurse first examined plaintiff on September 6. (Doc. 39, Exh. G, Parks Aff.).

On September 18, 2001, plaintiff complained of numbness and tingling to his left hand based on an incident that occurred on September 6, 2001. (Doc. 39, Exh. G, Parks Aff., progress notes). His radial pulse was strong and there was no swelling, bruising, or deformities noted. *Id*. Ms. Parks states, "There was nothing in the medical report to subjectively confirm or deny the inmate's allegations that he was having numbness. There was no physical evidence to support the reported symptoms." (Doc.

39, Exh. G, Parks Aff. ¶6(d)).

X-rays of September 19, 2001, showed no obvious bony abnormalities, but "[t]here may be some mild non-specific soft tissue swelling of the distal forearm with no focal soft tissue findings noted." (Doc.39, Exh. F).

Nursing notes from September 26, 2001, indicate plaintiff continued to complain of numbness and "tiredness" in his left hand. A referral was made for plaintiff to see the institution physician. (Doc. 39, Exh. G, Parks Aff., progress notes).

Plaintiff was examined by the institution physician on October 2, 2001. He reported he had numbness and tingling since September 5, 2001, when he was placed in handcuffs. The doctor noted good color in his hand and full range of motion. There was no loss of sensation when the doctor pinched the effected area. The doctor assessed possible carpal tunnel syndrome and prescribed moist heat and "consider EMG." (Doc. 39, Exh. G, Parks Aff., progress notes).

Plaintiff was again examined on October 30, 2001, and complained of numbness in his left hand, stating it started after being handcuffed. He was advised that if it was nerve involvement, it may take a little longer to heal. (Doc. 39, Exh. G, Parks Aff., progress notes). Plaintiff was seen in the infirmary on November 14, 2001, complaining of continued pain and numbness. He had limited movement of the left wrist. (Doc. 39, Exh. G, Parks Aff., progress notes). Ms. Parks stated, "It is not possible for a person to have both pain and numbness. It would have to be one or the other." (Doc. 39, Exh. G, Parks Aff. ¶6(g), progress notes).

Plaintiff again saw the institutional doctor on November 29, 2001. Plaintiff complained of weakness in the left wrist and numbness in the entire left hand for two months. The doctor noted, "States has had this problem since being 'handcuffed & taken to the hole 9/5/01.'" (Doc. 39, Exh. G, progress notes). The doctor assessed possible carpal tunnel syndrome and ordered an EMG to rule out carpal tunnel syndrome. *Id*. The progress notes reflect that on January 30, 2002, an EMG was performed. However, the results of the test are not included in defendants' exhibits.

Ms. Parks states, "At no time in his entire medical chart does he claim that an officer used excessive force on him. On one or two occasions the injury is attributable to handcuffs." (Doc. 39, Parks Aff. ¶6(h)). Ms. Parks also states, "Since there is no physical evidence to substantiate Inmate Barnes' claim, any claim of injury cannot be

confirmed medically." (Doc. 39, Parks Aff. ¶9).

Plaintiff presents documents showing he was referred for an EMG on November 29, 2001, due to "weakness & numbness in left wrist & hand 'since handcuffed 9/5/01.'" (Doc. 57, Exh. C-1).  An EMG of January 30, 2002, showed a complete left superficial radial sensory nerve injury. (Doc. 57, Exh. C-3).  However, this finding did not explain plaintiff's complaint of weakness.  The EMG also showed no evidence of carpal tunnel syndrome. *Id*.  An orthopedic consultation report of March 14, 2002, notes complaints of left wrist pain for six months "after being hand-cuffed." (Doc. 57, Exh. D-1).  A repeat EMG of June 26, 2002 was unchanged. (Doc. 57, Exh. C-5).  An EMG dated February 19, 2003, showed:

> Left Superficial Radial Nerve Injury with no interval change since study of 1/30/02.  There is a radial sensory response to the first web space however the amplitude is less than 50% of the right indicating a poor prognosis for full recovery.

(Doc. 57, Exh. C-7).  Plaintiff was treated with prescription medication and physical therapy. (Doc. 57, Exhs. D-1 through D-7).

Plaintiff filed informal complaints on September 13 and October 10, 2001, complaining about defendant Thomas's alleged use of force and defendant Dunn's failure to protect him. (Doc. 57, Exhs. E-1, E-2).  Plaintiff filed two formal grievances on or about September 27 and October 1, 2001. (Doc. 39, Exhs. I, J).  In response to his grievances, plaintiff was informed, "Due to the fact that you did receive [an] apparent injury, this incident will be referred to the Warden who will assign a Use of Force Committee to investigate this incident." (Doc. 39, Exh. K).  Following an investigation, the Use of Force Committee found "Sgt. Thomas acted appropriately and in accordance with 5120-9-01 in handling this inmate." (Doc. 39, Exh. L).

Following a hearing, the protective custody committee found no evidence to support the need for protective custody.  Instead, plaintiff was moved to a different cellblock. (Doc. 39, Exh. B-3).

**II. Defendants' Motion For Summary Judgment Should Be Granted in Part and Denied in Part.**

**A. Plaintiff's excessive force claim against defendant Thomas.**

The Eighth Amendment prohibition against cruel and unusual punishment governs an inmate's claim of excessive force. *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir.), *cert. denied*, 515 U.S. 1116 (1995); *Cornwell v. Dahlberg*, 963 F.2d 912, 915-916 (6th Cir. 1992). To state a claim for excessive force, the inmate must establish that the force was applied maliciously and sadistically to cause harm rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 501 U.S. 1, 7 (1992); *Pelfrey*, 43 F.3d at 1037; *Caldwell v. Moore*, 968 F.2d 595, 599-601 (6th Cir. 1992). In making this determination, a court must consider the reasons for the use of force, the type and amount of the force used, and the extent of the injury inflicted. *See Hudson*, 501 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 320-322 (1986); *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).

Not every intrusion on a prisoner's bodily integrity will rise to the level of an Eighth Amendment violation, even if it appears in retrospect that the degree of force used was unreasonable and, thus, unnecessary. *Whitley*, 475 U.S. at 319; *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish*, 800 F.2d at 604.

An inmate may suffer a violation of his Eighth Amendment rights even though he did not suffer a serious injury at the hands of corrections officers. *Hudson*, 501 U.S. at 9-10. The extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. The Eighth Amendment does not prohibit a *de minimis* use of force "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 10. What constitutes a *de minimis* use of force depends upon the circumstances of each case. "[T]he core judicial inquiry is . . . whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

7

harm." *Id.* at 7.  For example, a guard who needlessly beats a handcuffed, submissive prisoner causing bruises, swelling, loosened teeth, and a cracked dental plate inflicts injuries that are more than *de minimis* for Eighth Amendment purposes. *Id.* at 10.  *See also Moore v. Holbrook*, 2 F.3d 697 (6th Cir. 1993).

In this case, defendants argue that no force was used by defendant Thomas in escorting plaintiff to the protective custody cellblock.  They argue that neither Thomas nor any of the officers in the control booth filed use of force or incident reports, which they were required to do by policy if in fact any force or touching of the inmate occurred.  Pursuant to Ohio Admin. Code § 5120-9-02, an employee must file a Use of Force Report if he or she observes the use of force by another employee. Defendants further argue there was no reason for Sgt. Thomas, the escorting officer, to touch plaintiff if there was no resistance by plaintiff.  Pursuant to institutional policy, escorting officers position themselves to the left and one step back from the inmate. (Doc. 39, Exh. R).  They further argue that plaintiff's injury is suspect for several reasons.  None of the medical reports attribute plaintiff's left arm injury to an alleged use of force by defendant Thomas.  While some of the reports attribute the injury to "handcuffs," none of the defendants actually handcuffed plaintiff.  They argue there is no evidence plaintiff told any of the officers in segregation of his injury and did not ask to see a nurse until 12 hours later.  When he was examined by the nurse there was no bruise, yet four days later he had a bruise.  Also, between the date of the injury and the end of the year, four months later, the infirmary notes fail to show an objective basis for the injury.  Defendants suggest that plaintiff has manufactured a story as has been his pattern in the past[4] and that his motivation for doing so in this instance was to get even with Sgt. Thomas for not charging plaintiff's former lover with assault four months earlier. (Doc. 39 at 10; Doc. 61 at 5).

To credit defendants' evidence on the issue of excessive force would require the Court to discredit the evidence presented by plaintiff which directly contradicts defendants' evidence on the material issues.  While defendants dispute plaintiff was even touched by defendant Thomas, plaintiff's sworn testimony indicates that Thomas grabbed plaintiff's handcuffed hands, twisted them, then lifted them in such a way to

---

[4]    The evidence presented by defendants concerning plaintiff's mental status and mental health treatment (Doc. 39, Exh. R) may ultimately be relevant to the issue of plaintiff's credibility and damages, but cannot be considered by the Court on summary judgment for purposes of concluding that plaintiff fabricated his allegations in this instance.

8

cause plaintiff pain and swelling in his wrist. While a jury may ultimately disbelieve plaintiff's testimony and credit defendants' evidence, the Court on summary judgment can neither weigh the evidence, nor make credibility determinations. *See Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir. 1999); *Talley v. Bravo Pitino Restaurant*, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).

Other disputed issues of fact exist in this matter. Defendants assert plaintiff failed to complain about his alleged injury until 12 hours after the fact, while plaintiff testified that upon his arrival at the protective custody cellblock he advised the officer on duty he needed medical attention, but was told he would have to wait for the nurse to make her rounds. While the early medical records presented by defendants do not show a severe injury or an objective basis for plaintiff's complaints, the later records presented by plaintiff, including the EMG reports, indicate plaintiff sustained a serious injury to his hand. Plaintiff's EMG evidence demonstrates an objective basis for his symptoms, i.e., a left superficial radial sensory nerve injury. The fact that an EMG was not performed until after plaintiff filed this lawsuit does not eliminate defendant Thomas's alleged actions as a cause of plaintiff's injury. A reasonable jury could infer from the EMG evidence of a radial nerve injury, coupled with plaintiff's continuous complaints of pain, numbness, and weakness in the left hand dating from September 6, 2003, that plaintiff's injury was attributable to defendant Thomas's actions.

In addition, while the Use of Force committee ultimately determined that defendant Thomas did not use excessive force against plaintiff, the Institutional Inspector's grievance decision indicates plaintiff "did receive [an] apparent injury" and referred the incident to the Warden for investigation by the Use of Force Committee. This evidence supports plaintiff's claim that some amount of force was used by Thomas. (Doc. 39, Exh. K).

Viewing the facts and evidence in the light most favorable to plaintiff, *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, a jury could reasonably infer that Sgt. Thomas twisted and lifted plaintiff's hands by his cuffs and that the action was not done in an effort to maintain order and security, but for the very purpose of inflicting harm on plaintiff in retaliation for plaintiff's complaints against Thomas a mere 25 minutes earlier. In considering the reasons for defendant's use of force, the type and amount of the force used, and the extent of the injury inflicted, *see Whitley*, 475 U.S.

at 320-322; *Moore*, 2 F.3d at 700, a fair minded jury could return a verdict for plaintiff on his Eighth Amendment excessive force claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiff's evidence, if true, would tend to show that defendant Thomas acted in bad faith, maliciously, or sadistically for the very purpose of causing harm. Accordingly, defendants' motion for summary judgment on plaintiff's excessive force claim against defendant Thomas should be denied.

### B. Plaintiff's deliberate indifference claim against defendant Dunn.

Plaintiff claims that defendant Dunn violated plaintiff's Eighth Amendment rights by not granting him protective custody from Sgt. Thomas. To establish an Eighth Amendment claim against defendant Dunn based on his alleged failure to protect plaintiff, plaintiff must present evidence showing that defendant Dunn's conduct amounted to "deliberate indifference" to a known risk of harm to plaintiff. *Farmer v. Brennan*, 511 U.S. 825 (1994). *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir. 1992); *Marsh v. Arn,* 937 F.2d 1056, 1060-61 (6th Cir. 1991); *Walker v. Norris*, 917 F.2d 1449, 1453-54 (6th Cir. 1990). A prison official may be held liable for his failure to protect inmates from attacks only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. To prove liability under the Eighth Amendment, plaintiff must show that defendant Dunn "failed to act despite [his] knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* at 837. Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844.

In the instant case, plaintiff presents evidence that approximately one week prior to Sgt. Thomas's alleged use of force, Thomas allegedly threatened to "hurt" plaintiff over a supposed violation of a recreation restriction. Plaintiff testified that he did not file a complaint or grievance over Thomas's alleged threat because he was not afraid Thomas would actually take action against him. (Barnes Depo. at 28). It was not until plaintiff was summoned for a meeting with defendant Dunn over an unrelated matter that plaintiff then asked for protective custody from Sgt. Thomas. Plaintiff fails to present any evidence whatsoever showing he advised defendant Dunn

10

of the reasons for his request for protective custody from Sgt. Thomas.  The ensuing discussion between defendant Dunn and plaintiff centered on whether plaintiff would be charged with a rule infraction over a recreation restriction. (Barnes Depo. at 28-29). Plaintiff was advised that the protective custody procedure was designed to protect inmates from other inmates, *see* Ohio Admin. Code § 5120-9-14, and that if he had a complaint concerning defendant Thomas he could pursue the inmate grievance procedure pursuant to Ohio Admin. Code § 5120-9-31.  In view of the length of time between Sgt. Thomas's alleged threat, plaintiff's spontaneous request for protective custody from Thomas during a meeting over an unrelated subject, and plaintiff's failure to present evidence indicating he actually articulated the basis for his perceived fear, it was not unreasonable for defendant Dunn to simply advise plaintiff of the steps he could pursue to address his complaints about Thomas.  Plaintiff fails to present evidence from which a reasonable jury could conclude that defendant Dunn knew plaintiff faced a "substantial risk of serious harm" from Sgt. Thomas under the circumstances of this case.  Accordingly, plaintiff has failed to establish a prima facia case of deliberate indifference to safety against defendant Dunn.  Defendants' motion for summary judgment on plaintiff's Eighth Amendment deliberate indifference claim against defendant Dunn should be granted.[5]

### C.  Plaintiff's claim against defendant Neff.

Plaintiff claims defendant Neff is liable in this action because Neff was the person who ordered plaintiff be placed in the protective custody investigation cellblock. (Barnes Depo. at 41).  It is undisputed that defendant Neff received a note threatening plaintiff's life allegedly written by another inmate.  Once Neff received the note, he ordered an investigation by defendant Dunn.  Pursuant to institutional policy, he also ordered that plaintiff by placed in segregation during the investigation. The steps defendant Neff took in response to the alleged threat to plaintiff were reasonable under the circumstances and do not constitute deliberate indifference to plaintiff's safety under the facts of this case.  Plaintiff alleges no other facts or actions

---

[5]    Plaintiff objects to defendant Dunn's participation on the Use of Force Committee which investigated the alleged threat to plaintiff by another inmate. (Doc. 62 at 3).  Whether or not defendant Dunn participated on such a committee is irrelevant to plaintiff's deliberate indifference claim against defendant Dunn.  Whether or not defendant Dunn had the requisite knowledge of a substantial risk of harm to plaintiff's safety necessarily occurred on the date of the alleged use of force, and not at the time the Use of Force Committee conducted its proceedings later that month.

by defendant Neff which would establish an Eighth Amendment violation. Therefore, defendants' motion for summary judgment on plaintiff's claim against defendant Neff should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' motion for summary judgment be denied on plaintiff's excessive use of force claim against defendant Thomas.

2.  Defendants' motion for summary judgment be granted on plaintiff's Eighth Amendment claims against defendants Dunn and Neff.

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).


Date:  11/25/2003                        s/Susan M. Novotny
                                         Susan M. Novotny
                                         United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING THE FILING OF
OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

J:\KLL\02-101 msj r&r.wpd